**Lynne SPENCE and Victor Spence, Plaintiffs,**

v.

**ASPEN SKIING COMPANY, a Colorado corporation, and John Doe, Defendants.**

Civ. A. No. 91 N 341.

United States District Court, D. Colorado.

May 10, 1993.

Thomas Dalton McFarland, Littleton, CO, Larry D. Fowler, Fowler Tuttle Clark & Coleman, Lansing, MI, for plaintiffs.

Scott S. Barker, Holland & Hart, Denver, CO, for defendants.

**MEMORANDUM OPINION
AND ORDER**

NOTTINGHAM, Judge.

This personal injury action having been tried on the merits to a jury, the jury returned a special verdict finding that plaintiff sustained total damage of $38,500. The jury also found, however, that 95% of this damage was chargeable to Plaintiff Lynne Spence, while only 5% was chargeable to Defendant Aspen Skiing Company. Accordingly, in accordance with Colorado law, the court entered judgment for defendant and dismissed the case.

The matter is now before the court on the "Motion for New Trial or in the Alternative Amendment of the Judgment Heretofore Entered" filed by Plaintiff Lynne Spence on July 30, 1992. The sole basis for the motion is that the court should not have instructed the jury, in these circumstances, that it could consider the contributory negligence of Lynne Spence. Upon further analysis of the law, I conclude that plaintiff's contention has merit. I do not believe, however, that a new

trial is required. The proper remedy is to vacate the judgment previously entered and enter judgment in favor of Lynne Spence.

## FACTS

While skiing at one of the ski areas owned by the Aspen Skiing Company, Ms. Spence became dizzy and light-headed. Someone called the ski patrol, and a patrolman named Steven Schreiber eventually arrived on the scene. Mr. Schreiber, an employee of the Aspen Skiing Company, was an emergency medical technician (EMT). Among the things he did for Ms. Spence was to give her an intravenous (IV) solution. At some point after the IV commenced, Ms. Spence began to experience redness, swelling, and other symptoms in the arm through which she received the IV. The symptoms were serious enough that some surgery was eventually required, and Ms. Spence lost some use of this arm.

It was plaintiff's theory of the case that the EMT employed by defendant was negligent in inserting the IV and in tending to it after it was inserted. The issues of (1) whether the EMT's conduct was negligent and, if it was, (2) what damages Ms. Spence sustained as a result of that negligence were vigorously contested, and the jury was confronted with considerable conflicting evidence on both issues. No party, in briefing the motion at issue, has contested the sufficiency of the evidence to sustain the jury's conclusions that defendant was negligent, that its negligence was a cause of Ms. Spence's damages, and that those damages amounted to $38,500.

The jury also heard that Ms. Spence had suffered from hypoglycemia since the mid-1970's. She had received medical treatment for this condition. A part of this treatment consisted of instructions that she follow a prescribed regimen concerning what she should eat and when she should eat it. There was also evidence that Ms. Spence had deviated from this regimen at the time when she experienced the dizziness and light-headedness and that the dizziness and light-headedness were symptoms of a hypoglycemic episode. It was defendant's theory that her failure to follow the regimen prescribed by her doctors constituted negligence which con-

tributed, in large part, to any damage which she sustained. Having been instructed by the court that it could consider her negligence, the jury apparently accepted defendant's theory and found that 95% of her damage was caused by her own neglect. It is important to note that, while Ms. Spence's neglect of her dietary regimen undoubtedly precipitated the situation requiring treatment by an EMT, there was no evidence that her hypoglycemia—or her failure to control the hypoglycemia—contributed in any way to the specific arm injury which was the basis for her damage claim.

## DISCUSSION

This diversity-of-citizenship case is governed by the substantive law of Colorado. Arguing that there is no applicable Colorado authority, Ms. Spence has cited a number of cases from other jurisdictions. Having reviewed these cases, I have found three—one decided by the Nebraska Supreme Court and two decided by the Florida Court of Appeals—to be persuasive. *See Jensen v. Archbishop Bergan Mercy Hosp.*, 236 Neb. 1, 459 N.W.2d 178 (1990); *Whitehead v. Linkous*, 404 So.2d 377 (Fla.Dist.Ct.App.1981); *Matthews v. Williford*, 318 So.2d 480 (Fla. Dist.Ct.App.1975). Each of these cases was an action against a hospital and/or doctor, alleging that defendants were negligent in providing care and treatment to plaintiff's decedent. In each case, plaintiff's decedent had done something negligent to place himself in the situation where he required hospitalization and medical care. In *Jensen*, the decedent had failed to follow a recommendation that he lose excess weight. In *Matthews*, plaintiff's decedent had suffered a prior heart attack and been advised that he should not smoke or become overweight. In *Whitehead*, plaintiff's decedent had taken an overdose of drugs and consumed a large amount of beer, in an apparent suicide attempt. In each case, the appellate court held that a jury should not be instructed on contributory negligence or allowed to consider contributory negligence in such circumstances. Citing both *Whitehead* and *Matthews*, the *Jensen* court explained:

544

[M]any courts have held that the defense of contributory negligence in a medical malpractice action is inapplicable when a patient's conduct provides the occasion for medical attention, care, or treatment which later is the subject of a medical malpractice claim.

*Jensen,* 459 N.W.2d at 184. *Accord White-head,* 404 So.2d at 379; *Matthews,* 318 So.2d at 483.

I find *Jensen, Matthews,* and *Whitehead* persuasive and applicable to the case before me. Persons providing medical treatment—whether they be hospitals, doctors, nurses, or EMT's—should expect to treat not only patients who fall ill or are injured through no fault of their own, but also those whose own neglect or intentional conduct has placed them in the precarious position of requiring medical treatment. Indeed, the latter category of patients is probably as numerous as the former category. All patients, regardless of how they sustain an illness or injury, may reasonably expect competent treatment from those into whose hands they have placed themselves. *See Martineau v. Nelson,* 311 Minn. 92, 247 N.W.2d 409, 415 (1976) ("availability of a contributory negligence defense in a malpractice case is limited because of the disparity in medical knowledge between the patient and his doctor and because of the patient's right to rely on the doctor's knowledge and skill in the course of medical treatment"). It would be inconsistent with the reasonable and normal expectations of both parties for the court to excuse or reduce the provider's liability simply because it was the patient's own fault that she required care in the first place.

Ms. Spence's situation presents an especially compelling case for the application of the rule reflected in *Jensen, Matthews,* and *Whitehead.* In each of those cases, it could at least be argued that there was some causal connection between the patient's antecedent conduct and the result which formed the basis of the claim. In *Whitehead,* for example, the patient's ingestion of drugs and alcohol undoubtedly contributed rather directly to his death. The hospital was nonetheless held liable because competent action on its part could have prevented his death. In Ms.

Spence's case, in contrast, the causal connection is attenuated. There was no evidence that Ms. Spence's hypoglycemia or her failure to prevent a hypoglycemic episode contributed to the arm injury which formed the basis of her claim. In short, this is a case where (1) plaintiff's own neglect provided the occasion requiring medical attention and (2) defendant's neglect caused a distinct, subsequent injury. While plaintiff's conduct may have been a cause-in-fact of her injury—but for her own neglect, she would not have required attention from defendant's EMT—it cannot, as a matter of law, be regarded as the legal or proximate cause of her arm injury.

Defendant advances two arguments in opposition to this conclusion. First, it observes that the Colorado comparative negligence statute applies in "*any* action . . . to recover damages for negligence." *See* Colo.Rev.Stat. § 13–21–111(1) (1987 Repl.Vol.). Second, it maintains that the Colorado Court of Appeals' decision in *Blackman for Blackman v. Rifkin,* 759 P.2d 54 (Colo.Ct.App.1988), *cert. denied* (Jan. 9, 1989), requires that a jury consider a plaintiff's contributory negligence in this situation.

The language of the comparative negligence statute is inconclusive on the issue before the court. All of the authorities which I have discussed recognize, consistent with the Colorado statute, that contributory negligence may properly be asserted in certain medical malpractice cases. The statute does not eliminate the requirement that the plaintiff's negligence be a proximate or legal cause of her own damage.

I also conclude that *Blackman* is inapposite in this case. In *Blackman,* there was evidence that plaintiff, who had consumed alcohol, was unable to provide an adequate history and that her obstreperous behavior interfered with diagnosis and treatment. There was also evidence that the regurgitation and aspiration which led to plaintiff's respiratory failure and brain damage was the result of the physiological effects of alcohol, not the result of her treatment by defendants. 759 P.2d at 56. Here, in contrast, there was no evidence that the injury to Ms.

Spence's arm was the result of her hypoglycemia or her failure to control it.

Upon the foregoing findings and conclusions, it is

ORDERED as follows:

1. The Judgment filed in this case on July 20, 1992, is VACATED.

2. The clerk shall enter judgment in favor or Plaintiff Lynne Spence and against Defendant Aspen Skiing Company in the principal amount of $38,500. Pursuant to Colo.Rev. Stat. § 13–21–101 (1987 Repl.Vol.), the clerk shall calculate interest on this sum at the rate of 9% per annum, commencing January 15, 1990 (the date the cause of action accrued), and compounded annually from March 4, 1991 (the date the case was filed), through the date judgment is entered.

3. The complaint of Plaintiff Victor Spence is dismissed, the court having rendered judgment as a matter of law against him before the jury retired to deliberate.

4. Plaintiff Lynne Spence shall have her costs upon the filing of a bill of costs with the clerk of this court within ten (10) days of the entry of this judgment.